### LEFEVERS v. GENERAL EXPORT IRON & METAL CO.

Civ. A. No. 82.

District Court, S. D. Texas, Corpus Christi Division.

Dec. 10, 1940.

Supplemental Opinion Jan. 6, 1941.

Carson & Alsup, of Corpus Christi, Tex., for plaintiff.

Pichinson & Martin, of Corpus Christi, Tex., for defendant.

ALLRED, District Judge.

Plaintiff, a resident citizen of Texas, sues defendant, a Texas corporation, for unpaid minimum wages and overtime compensation in the sum of $882.22; as well as a like amount for liquidated damages and $500 attorneys' fees, under the Fair Labor Standards Act of 1938, §§ 1–19, 29 U.S.C.A. §§ 201–219.

Plaintiff alleged and proved that he was employed "as a night watchman to safeguard the premises on which defendant's plant was located and the materials there situated," from October 24, 1938 (the effective date of the act) to April 9, 1940, at a salary of $70 per month. He worked twelve hours a night, from 7 p. m. to 7 a. m., his wage scale thus being .192¢ per hour.

During such time defendant was engaged in the junk business, collecting and exporting in commerce iron, metals and other materials commonly referred to as junk. Defendant's yards covered some five or six acres. Assembling facilities were located on the yard for the purpose of breaking up, processing and preparing this junk for shipments in commerce. Upon the trial defendant admitted that it was "engaged in commerce" and "in the production of goods for commerce"; and the evidence shows clearly that numerous employees were employed, regularly engaged in processing, working upon and preparing goods for shipment in commerce.

■ Since the suit is brought under an Act of Congress which declares (Sec. 202 (b), that it is one "to regulate commerce," this Court has jurisdiction, irrespective of the amount in controversy. 28 U.S.C.A. § 41(1)–(8); Campbell v. Superior Decalcominia Co., D.C.Tex., 31 F.Supp. 663, and cases therein cited.

Sec. 6(a) of the Fair Labor Standards Act provides that every employer shall pay to each of his employees who is "engaged in commerce or in the production of goods for commerce" wages at the rates therein specified. "Produced" is defined in Sec. 203(j) to mean: " * * * produced, manufactured, mined, *handled,* or *in any oth-er manner worked on* in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation *necessary to the production thereof,* in any State." (Italics supplied.)

Defendant admits it was "engaged in commerce" and "in the production of goods for commerce."

Defendant's first proposition is that notwithstanding it was engaged in commerce and various others of its employees, who actually processed and prepared its products for shipment in commerce, were subject to the Fair Labor Standards Act, yet plaintiff, being only a night watchman, did not come under the Act.

Two Federal District Court opinions, Wood v. Central Sand & Gravel Co. et al., D.C.Tenn., 33 F.Supp. 40, and Reeves v. Howard County Rfg. Co., D.C.Tex., 33 F.Supp. 90; and Hart v. Gregory, 218 N.C. 184, 10 S.E.2d 644, 130 A.L.R. 265, hold a night watchman, performing other duties, such as the firing of a boiler, is entitled to pay under the Act.

Upon the trial plaintiff testified that in addition to his duties as night watchman he performed other services, such as the ranking of cars of employees actually engaged in producing or processing the junk for shipment, the shunting of railroad cars onto which the products were loaded, etc. Upon motion of defendant this testimony was stricken for the reason that there was no pleading to support it, plaintiff simply having alleged that he was a night watchman.

The Court offered plaintiff an opportunity to amend, but stated if the amendment was made the case would have to be continued in order that defendant might meet this testimony. Plaintiff thereupon declined to amend.

■ The Court may have erred in this ruling; but, in any event, I am of the opinion that a night watchman, performing the usual services as such, guarding and protecting goods processed or produced for shipment in commerce, while they are being processed or produced, or thereafter while awaiting shipment in transportation, thereby facilitates such commerce and is entitled to the benefits of the act. I do not think

that he needs necessarily actually and personally to assist in the processing and preparation of such goods. His services in guarding, caring for and protecting such commodities are as essential to the commerce as perhaps any other part played by individual workmen.

■ It is as necessary to the production of goods in commerce, especially upon the large scale shown by this record, that they be safeguarded and ready for the actual work done upon them as it is that an engine should be fired and ready for service when the regular workmen present themselves, as in one of the cases cited above. To hold otherwise does not give the Fair Labor Standards Act the liberal interpretation to which it is entitled.

The only authority to the contrary, if such it be, is Rogers v. Glazer, D.C.Mo., 32 F.Supp. 990. The opinion speaks for itself; and in the final analysis is bottomed upon the proposition that any services performed by that particular watchman, in connection with a very small business, were almost entirely in connection with retail establishments (an exception under the Act) and intrastate affairs. The case is not controlling here.

■ Defendant, seeking to evade the assessment of an amount equal to the unpaid minimum wages and overtime compensation, pleads its own good faith and unintentional violation of the act; and tenders payment of the actual amount due. About the time plaintiff left defendant's service, or shortly thereafter, defendant was advised by a representative of the Wage and Hour division that plaintiff was entitled to the benefits of the act. At that time defendant expressed to plaintiff its willingness to pay whatever amount was found by such representative to be due plaintiff under the act; but defendant never actually tendered any particular amount to plaintiff.

I find nothing in the act relieving an employer from this liability under such circumstances. Sec. 216(b) provides that any employer who violates this law *shall be* liable, not only for the unpaid minimum wages and unpaid overtime, but for "an additional equal amount as liquidated damages" and for reasonable attorneys' fees.

Judgment will be for plaintiff for the sum of $882.44, the amount due him as unpaid minimum wages and overtime compensation, and an equal amount as liquidated damages; plus a reasonable attorneys' fee of $200; or a total of $1,964.88.

### Supplemental Opinion.

After the above memorandum was prepared, a letter was received by the Clerk of this court from the Regional Counsel for the Wage and Hour Division, of the Department of Labor, stating that it had come to the attention of such counsel that the defendant's answer in this case raised the question of the constitutionality of the Fair Labor Standards Act.

The case had been taken under submission, on briefs, on November 20, 1940. At the time of the trial, the Court asked the attorneys to state their pleadings, and such statement was made by counsel for both sides. No mention was made of any constitutional question; and the defendant did not contend in the briefs filed with the Court that the Act was unconstitutional.

The pleadings disclose that Paragraphs XX and XXII squarely raised the question of the validity of the Act as a whole; and particularly as applied to the defendant under the facts in this case. Therefore, on December 10, 1940, the Court entered an order requiring the Clerk to certify the facts to the Attorney General of the United States and the United States District Attorney for this district, under Sec. 401, Title 28 U.S.C.A.

Both the Attorney General and the District Attorney have notified the Court that, in view of the failure of defendant's counsel to press the constitutional question at the trial, or on brief, they do not desire to intervene.

Judgment will, therefore, be entered for plaintiff in the amount indicated.

Let an order be prepared in accordance with this memorandum.

The Clerk will notify counsel.