**ALLEN v. MOE.**

No. 1477.

District Court, D. Idaho, N. D.

May 31, 1941.

Roy C. Fox and Wilmot W. Garvin, both of Spokane, Wash., for plaintiff.

C. H. Potts, of Coeur d'Alene, Idaho, for defendant.

CAVANAH, District Judge.

The nature of the suit is where the plaintiff seeks to recover the sum of $2,133 and attorney's fees for alleged labor as a mechanic on the basis of a 44-hour week of labor in repairing, adjusting and keeping in working condition, trucks and tractors and other mechanical equipment used by the defendant in the manufacture, production and delivery of saw logs to the Ohio Match Company at an agreed sum of $165 per month, amounting to 90 cents per hour and during the period he worked, he worked in overtime employment 790 hours. He further alleges that under the provisions of section 7 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 207, he became and is entitled to compensation for his overtime employment at the rate of one and one-half times his regular pay of 90 cents per hour, namely, at the rate of $1.35 per hour and is entitled under paragraph (b) of Section 16 of the Act, 29 U.S.C.A. § 216(b), to recover as liquidated damages an additional amount equal to the amount of overtime compensation and for attorney's fees.

The provisions of the Fair Labor Standards Act under which the suit is brought are sections 207 and 216(b) Title 29 U.S. C.A., which provides:

6

207(a): "No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—(1) for a workweek longer than forty-four hours during the first year from the effective date of this section, * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

And section 216(b) provides: "Any employer who violates the provisions of section 206 or section 207 of this chapter shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The Court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

■ The inquiry first is, when in considering the application of these provisions of the Act, was the defendant an employer of the plaintiff under the allegations of the complaint, and if so, was plaintiff an employee employed by the defendant, who was engaged in commerce, or in the production of goods for commerce?

It seems clear that section 207(a) relating to maximum hours relates to the employer who is engaged in commerce or in the production of goods for commerce: The complaint alleges that: "The defendant E. C. Moe was an employer engaged in the production of goods for commerce, to-wit: That the said E. C. Moe, pursuant to a contract between the said E. C. Moe and the Ohio Match Company, a corporation, was at all times hereinafter mentioned engaged in cutting, manufacturing, hauling and delivering saw-logs from the forest, to be delivered afloat in the St. Joe River, for and on behalf of said Ohio Match Company, a corporation, which said saw-logs were produced and manufactured and delivered to said Ohio Match Company, a corporation,

to be then processed and manufactured into match blocks and matches, an article sold, shipped and delivered by the said Ohio Match Company, a corporation, in interstate commerce." But it is urged by the defendant that it appears that he was not engaged in activities in interstate commerce or production of goods for commerce as it was the Ohio Match Company who was doing so, for he had only agreed pursuant to a contract between himself and the Company to engage in cutting, hauling and delivering the saw-logs from the forest to be delivered to the Company in the St. Joe River and when that was done his activities ceased and from that time on the logs were, by the Company, processed and manufactured into match blocks and matches, sold, shipped and delivered by it in interstate commerce and it was the only one who manufactured, shipped and produced the goods for commerce.

The interpretation of the complaint, by the defendant, would seem to be the correct one, were it not for the recent decisions of the Supreme Court of the United States where the construction as to the extent of the phrase "or in the production of goods for commerce" is given a broad interpretation in prescribing the limits of that phrase, and held that the power of congress to regulate interstate commerce extends to the regulation of activities intra-state which have a substantial effect on the commerce, and Congress, to attain its objective has made no distinction as to the volume of shipments in the commerce "or of production for commerce by any particular shipper or producer" but recognized that "in present day industry, competition by a small part may affect the whole and that the total effect of the competition of many small producers may be great. * * * The legislation aimed at a whole embraces all its parts." United States v. Darby Lumber Co. et al., 312 U.S. 100, 61 S.Ct. 451, 461, 85 L.Ed. ——, 132 A.L.R. 1430.

In the case of Sunshine Mining Co. v. Carver et al., D.C., 34 F.Supp. 274, 277, this Court had under consideration as to the interpretation of the phrase "in the production of goods for commerce" found in the Fair Labor Standards Act, where the complaint alleged that plaintiff's employees were engaged in the production of ore which after being refined or processed by the smelter went into Interstate Commerce, and the character of plaintiff's business was in the operation of a mine, and its ore and the concentrating of such ore in its mill, sell-

ing the concentrated ore to the Bunker Hill and Sullivan Mining and Concentrating Company for cash F O B the cars within the state, and such concentrated ore was taken by the buyer and purchased by persons within and without the State, and it was there held that the Act applied to the plaintiff's employees, and that, "Congress in describing the employees to whom the Act applies, distinguished between persons engaged in interstate commerce, and those employed in producing goods for interstate commerce, both classes are covered." And further said: "The expressions 'produced' and 'goods' in the Act indicate that Congress intended the Act to apply to employees engaged in producing goods which are processed further or changed as to form by other persons before going into interstate commerce and the employee who produces goods which form an ingredient or part of other goods which go into interstate commerce is 'engaged in the production of goods for interstate commerce.'" See National Labor Relations Board v. Fainblatt et al., 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; Opp Cotton Mills v. Administrator of Wage and Hour Division of the Department of Labor, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. ——, National Labor Relations Board v. Jones & Laughlin Steel Co. et al., 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Schechter Poultry Corporation et al. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

So when in applying the alleged facts in the present case which in substance recites that the defendant employed plaintiff at an agreed wage of $165 per month for labor rendered in carrying out a contract the defendant had with the Ohio Match Company, who was to receive the logs, and manufacture, ship and deliver them in interstate commerce, such employment and labor rendered by the plaintiff affected the manufacture and delivery of the goods by the Company in interstate commerce and embraced a part of such manufacture and shipment of the goods made from the logs. If such was not the case, then one who manufactures goods and shipped them in interstate commerce could avoid the application of the Fair Labor Standards Act by entering into a contract with another to employ men to produce logs to be delivered by them and thereby indirectly create a situation placing them beyond the operation of the Act. So as a matter of fact appearing in the complaint, the

Fair Labor Standards Act is applicable to the situation of the plaintiff and therefore the Court has jurisdiction. Campbell v. Superior Decalcominia Co., Inc., D.C., 31 F. Supp. 663; Fishman v. Marcouse, D.C., 32 F.Supp. 460.

Approaching then the second question, upon what basis is the overtime wages to be paid computed? Does it apply to maximum or minimum wage prescribed in the Act?

 The Fair Labor Standards Act does not prohibit the parties from contracting with reference to labor provided compensation to be paid is not less than the minimum and within the scale fixed by the Act. Lengel et al. v. Newark Newsdealers Supply Co., D.C., 32 F.Supp. 567; Reeves v. Howard County Refining Co., D.C., 33 F.Supp. 90. Opp Cotton Mills, Inc., v. Administrator of Wage and Hour Division of Department of Labor, 5 Cir., 111 F.2d 23.

Motion to dismiss is overruled.